UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MONIKA B.,

    Plaintiff,

  v.

ANDREW SAUL,

    Defendant.

No. 20 CV 638

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Monika B.[1] contests the Social Security Commissioner's decision denying her Social Security Disability Insurance. For reasons explained below, I reverse the Commissioner's decision and remand the matter back to the agency for proceedings consistent with this decision.

## I.  Legal Standard

Judicial review of social security decisions is limited to determining whether the administrative law judge's factual findings are supported by substantial evidence in the administrative record. *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019).[2] Substantial evidence is a low threshold and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Even when

---

[1] I refer to the plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22.

[2] Only a "final decision" made by the Social Security Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A ruling by the Appeals Council, as is the case here, is considered a final decision. 20 C.F.R. § 416.1481; *see also* 42 U.S.C. § 405(a) (the Commissioner has broad authority to create rules and regulations to enact social security laws).

reasonable minds could reach different conclusions, I cannot reweigh the evidence or substitute my judgment for the ALJ's. *Zoch v. Saul*, 2020 WL 6883424, at \*3 (7th Cir. 2020). I only analyze whether the ALJ built an "accurate and logical bridge" between the evidence and the conclusion, *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020), and whether the judge's analysis had enough detail and clarity to permit meaningful review. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). An ALJ's credibility findings are given special deference and will only be overturned if "patently wrong." *Apke v. Saul*, 817 Fed.Appx. 252, 257 (7th Cir. 2020) (citing *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). I can affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). If the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," the case will be remanded. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). [3]

## II.  Facts

Monika B. was diagnosed with relapsing-remitting multiple sclerosis and depression related to her diagnosis in 2012. [8-2] at 4.[4] She applied for social security disability benefits. [8-2] at 29.[5] The state-ordered physical examination found she had

---

[3] The government filed its brief as a response to a motion for summary judgment. But the standard for summary judgment motions and social security appeals are different. "Social Security appeals are exempt from the typical summary-judgment procedures," and "[w]hether substantial evidence supports an ALJ's finding is a question of law that does not entail factfinding." *Davenport v. Berryhill*, 721 Fed.Appx. 524, 527 (7th Cir. 2018) (citing *Milton v. Harris*, 616 F.2d 968, 975 (7th Cir. 1980)).

[4] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

[5] Relapsing-remitting multiple sclerosis is defined as a form of "MS in which patients have

no significant physical limitations and noted mild difficulty with finger manipulation in her right hand. [8-4] at 54–56.[6] The state medical consultant concluded that she could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for about 6 hours, sit for about 6 hours, and that both hands were limited in handling and fingering. [8-2] at 6–7.[7] The state psychological examination found no significant memory limitations. [8-4] at 50–52.[8] The state psychological consultant noted the plaintiff faced moderate difficulties in maintaining concentration, persistence, and pace and limited her to unskilled work. [8-2] at 4–5, 9–10. The Social Security Administration denied the plaintiff's claim, and she submitted a request for reconsideration. [8-2] at 31, 35. As part of the reconsideration process, the plaintiff

---

relapses of MS and periods of stability in between relapses. Relapses are episodes of new or worsening symptoms not caused by fever or infection and that last more than 48 hours." Relapsing Remitting MS (RRMS): Multiple Sclerosis, available at: https://my.clevelandclinic.org/health/diseases/14905-ms-relapsing-remitting-multiple-sclerosis-rrms#:~:text=Relapsing-remitting (last visited Dec. 22, 2020). Although symptoms of RRMS vary, the following symptoms have been identified as frequent early signs: episodes of visual loss, tingling or numbness, double vision, fatigue, urinary urgency, balance problems, and weakness. *Id.*

[6] The Illinois Department of Human Services works with the Social Security Administration in determining eligibility for social security disability benefits. *See Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012); Illinois Department of Human Services, "Disability Determination Services," www.dhs.state.il.us/page.aspx? item=80259 (last visited Dec. 22, 2020). If the medical record is deficient, the SSA, state agency, or ALJ must supplement the record, which, here, included the IDHS ordering additional mental and physical examinations to help determine whether the plaintiff was disabled. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); 20 C.F.R. §§ 416.912(b)(2), 416.917–416.919.

[7] "Handling" refers to "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands" and "fingering" involves "picking, pinching, or otherwise working primarily with the fingers." SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

[8] The SSA evaluates four areas of mental functioning: 1) understand, remember, apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself, and uses a five-point scale to rank the degree of limitation: 1) none; 2) mild; 3) moderate; 4) marked; or 5) extreme. 20 C.F.R. § 404.1520a.

underwent a second physical examination. [8-4] at 73–76. The doctor found no significant physical limitations and noted weaker grip strength in the plaintiff's left hand. [8-4] at 75. The second medical consultant reduced the plaintiff's ability to stand or walk to 2 hours because she had some gait difficulty, and also indicated that the plaintiff could sit about 6 hours, lift or carry 20 pounds occasionally and 10 pounds frequently, and had limited handling in the left hand. [8-2] at 22–23. During the second state-ordered psychological examination, the psychologist described the plaintiff's memory as adequate and intact. [8-4] at 68–70. The second psychological consultant also concluded the plaintiff faced moderate limitations in concentration, persistence, or pace and limited her to unskilled work. [8-2] at 19–21, 24–26. The SSA denied the application upon reconsideration, concluding that the plaintiff experienced some restrictions in her ability to function because of her diagnosis but could still perform sedentary unskilled work. [8-2] at 41. The plaintiff appealed the denial to an administrative law judge. [8-2] at 42. A physician testified at the hearing before the ALJ and said that the plaintiff had a minor limp, was limited to sedentary work, had the ability to stand or walk for about 2 hours and sit for about 6 hours, and could use both hands frequently for manipulative activities. [8-1] at 90.[9] The ALJ denied the plaintiff's appeal, [8-1] at 20, and the Social Security Appeals Council denied her request for review. [8-1] at 7. The plaintiff filed a federal lawsuit appealing the Appeals Council's decision, and the District Court granted an agreed order to reverse

---

[9] "Frequent" means occurring from one-third to two-thirds of the time, compared to "occasionally" (which means very little up to one-third of the time) or all the time. SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

4

and remand the decision. [8-5] at 98. The Appeals Council vacated the final decision and remanded the case with specific instructions for the ALJ to correct deficiencies in the vocational expert's testimony. [8-6] at 4; [8-5] at 20.

On remand, a different ALJ reviewed the plaintiff's application for benefits under the five-step test the SSA uses to determine disability. [8-5] at 17, 21. The five-step inquiry asks: 1) whether the claimant is currently employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; 4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and 5) whether the claimant is capable of performing any work in the national economy. 20 C.F.R. § 404.1520.[10] At the first step, the ALJ concluded that the plaintiff had not engaged in substantial gainful activity during the relevant time period. [8-5] at 22.[11] At the second step, he found that the plaintiff's impairments—multiple sclerosis and mood disorder—were severe and significantly limited her ability to perform basic work activities. [8-5] at 22–23. At the third step, he concluded that the plaintiff's impairments did not meet or medically equal impairments that the SSA considers conclusively disabling because her multiple sclerosis was not an extreme

---

[10] If the agency cannot determine disability at a step, it goes on to the next step. 20 C.F.R. § 404.1520(4). The claimant has the burden of proving disability at steps one through four; the burden of proof shifts to the Commissioner at step five. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

[11] Based on her work record, the plaintiff's period of disability coverage was from the onset date of her diagnosis in July 2012 through September 2015, the last month she qualified for insurance. [8-1] at 23; *see* 20 C.F.R. § 404.131.

5

limitation or a combination of one marked limitation in physical functioning and one marked limitation in mental functioning. [8-5] at 23.

When assessing the plaintiff's mental functioning under step three, the ALJ concluded that the plaintiff's ability to understand, remember, and apply information was "fair." [8-5] at 23.[12] The ALJ did not find the plaintiff's testimony, *see e.g.* [8-5] at 52, that her memory had significantly deteriorated credible, [8-5] at 23, because her treatment records from 2018 and 2017 did not contain notes about memory loss, although memory problems were noted in records from 2016 and 2015. *Compare* [8-7] at 50–100, *and* [8-8] at 1–82, *with* [8-7] at 4–6. And the two psychological exams found no significant memory limitations. [8-5] at 23. With regards to concentration, persistence, or maintaining pace, the ALJ determined the plaintiff's limitations were "mild." [8-5] at 24. He discredited the plaintiff's self-report that she had difficulty focusing based on the results of the two psychological exams and the conclusions made by the two psychological consultants. [8-5] at 24. For the last two areas of mental functioning—interacting with others and adapting or managing oneself—the ALJ determined that the plaintiff had no limitations. [8-5] at 23–24.

Because the plaintiff's impairments were severe under step two (because they had more than a minimal effect on her ability to do basic work) but were not conclusively disabling disorders under step three, the ALJ proceeded to determine

---

[12] The areas of mental functioning the ALJ evaluated were different from the mental functioning categories the first ALJ reviewed, *compare* [8-1] at 26, *with* [8-5] at 23–24, because the SSA revised the criteria while the plaintiff's case was pending. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016).

her "residual functional capacity" in order to complete steps four and five. 20 C.F.R. § 416.920(a)(4). A claimant's RFC represents the most physical and mental activity the claimant can do in a work setting—8 hours a day, 5 days a week—despite her medical impairments. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). This is a broad assessment that considers: 1) all the relevant evidence, medical and non-medical; 2) all the claimant's limitations, including non-severe ones; and 3) the claimant's physical limitations and nonphysical limitations. *Id.* The ALJ considered the plaintiff's subjective symptoms—including her use of an unprescribed cane, difficulty walking and lifting, losing balance, falling down 2 to 3 times a week, weakness in her arms and legs, muscle spasms, vertigo, memory problems, significant fatigue, periods of ups but mostly downs, minimal driving abilities, deteriorating vision, and depression—and found their alleged severity inconsistent with the objective medical record. [8-5] at 24–31.

Although the plaintiff initially experienced slurred speech and some shaking, her treating neurologist reported that her relapsing-remitting MS stabilized after her diagnosis. [8-3] at 100; [8-4] at 18–22, 44.[13] The ALJ concluded the severity of plaintiff's subjective symptoms—such as excessive shakiness; weakness, numbness, and pain in her arms, legs, and hands; leg spasms; driving limitations; inability to use a keyboard; dropping objects occasionally; poor memory and balance; and urination issues—was at odds with her treating neurologist's notes indicating stability and the state-ordered medical examination results, which found no

---

[13] The neurologist also noted carpal tunnel in both hands. [8-4] at 22.

7

significant physical limitations. [8-5] at 27, 29. Another MRI indicated no new symptoms. [8-5] at 29; [8-4] at 82. The plaintiff saw her treating neurologist again about a year after her last appointment. [8-4] at 89. No flare ups were noted, and the doctor described her MS as stable. [8-4] at 89. The plaintiff did report mild dizziness and muscle spasms about a month later, but her MS remained stable. [8-4] at 90. About a year later, the plaintiff's primary care doctor noted minor leg pain, which was treated with Tylenol. [8-4] at 97; [8-5] at 2. More recent notes from the treating neurologist stated that the plaintiff experienced stiffness in her legs and had a mild spastic gait, but that her MS was generally stable. [8-8] at 19–20. The plaintiff also saw a physician's assistant with more frequency, who described the plaintiff as having a normal sensation, strength, and gait multiple times. [8-7] at 50; [8-8] at 4–5, 28, 39.

Consequently, the ALJ gave little weight to a note from the treating neurologist, [8-5] at 30, which was submitted after the plaintiff's first hearing, [8-1] at 4. The note briefly stated that the plaintiff was unable to work, had physical limitations related to weakness, pain, and fatigue, and had cognitive issues. [8-5] at 3. The ALJ explained that he disregarded the opinion because the neurologist hadn't seen the plaintiff in over a year when the letter was written, the letter provided little explanation or analysis, and the opinion was not consistent with the objective medical record indicating generally stable, normal functioning. [8-5] at 30. The ALJ also gave little weight to an RFC note from the physician's assistant, [8-8] at 92–94, which said that the plaintiff had extreme limitations (such as handling and fingering limited to

8

20 percent; being absent 5 days or more per month from work; and being off task 20 percent) since the PA did not explain these conclusions, and the conclusions were inconsistent with the PA's own treatment notes describing normal functioning. [8-5] at 31.

Instead, the ALJ gave greater weight to the opinions of the second medical consultant and the physician who testified at the plaintiff's first hearing, because they were familiar with the record and Social Security regulations, and their opinions were consistent with objective medical evidence. [8-5] at 30. The ALJ also stated that the plaintiff's subjective claims about fatigue, weakness, and poor balance were accommodated by limiting her to sedentary work with postural and environmental limitations and noted that the plaintiff made no reference to any effect on the use of her hands during her testimony. [8-5] at 26.[14]

As for the plaintiff's depression, the ALJ noted that medical records indicated medication helped stabilize the plaintiff's mood, even though the plaintiff's daughter recently reported that the plaintiff experienced temper tantrums. [8-4] at 16–17, 50–52, 100; [8-8] at 1, 19; [8-5] at 27–29. The ALJ also factored in the mental functioning analysis he conducted at step three, [8-5] at 24, and gave significant weight to the two state-ordered psychological consultants, who had concluded that the plaintiff faced some mental limitations and could perform unskilled work based on her mental functioning. [8-2] at 10, 26; [8-5] at 31.

---

[14] The neurologist prescribed the plaintiff medications for MS, urination, depression, and muscle spasms. [8-5] at 25–26. The plaintiff stated the muscle spasm medication made her tired, and Vitamin B12 helped her stay awake. *Id.*

Based on his analysis, the ALJ concluded that the plaintiff had the following RFC: she could perform sedentary work; could lift or carry 20 pounds occasionally and 10 pounds frequently; required a cane to ambulate; could not climb ladders, ropes or scaffolds; could occasionally climb stairs or ramps; could occasionally balance, stoop, kneel, crouch, crawl; had to avoid concentrated exposure to certain hazards; was limited to frequent handling and fingering with her non-dominant left hand; and could perform simple, routine, repetitive tasks. [8-5] at 24. Based on this RFC, the ALJ concluded that the plaintiff was unable to perform any past relevant work at step four. [8-5] at 31.

To complete step five, the ALJ asked a vocational expert hypothetical questions to determine whether the plaintiff could perform work in the national economy despite her limitations. [8-5] at 75–85. The vocational expert reviewed materials about the plaintiff's age, education, and work history and listened to the plaintiff's testimony. [8-5] at 76. The ALJ first presented the vocational expert with a hypothetical about a younger individual with a high school education, the plaintiff's work history, the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, the ability to stand or walk for about 6 hours and sit about 6 hours, and a left hand limited to frequent handling and fingering. [8-5] at 79.[15] The second hypothetical added the restriction of unskilled work. [8-5] at 80. The third hypothetical reduced standing or walking to 2 hours and added: no climbing ladders,

---

[15] "Younger individual" denotes claimants under 50. *See* 20 C.F.R. 404, Subpt. P, App. 2, § 201.00h.

ropes, or scaffolds; occasional climbing of stairs or ramps; occasional balancing, stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to certain hazards. [8-5] at 81. The vocational expert identified four jobs in the national economy that someone with these restrictions could perform: addressing clerk; document preparer; call-out operator; and charge account clerk. [8-5] at 82. In the fourth question, the ALJ added that the hypothetical individual was limited to simple, routine, repetitive tasks, a restriction that the vocational expert said would not impact the number of available jobs. [8-5] at 82. In the fifth hypothetical, the ALJ added that the hypothetical individual required a cane to ambulate, which the vocational expert said would reduce the availability of the document preparer role by 50 percent. [8-5] at 83. In the final hypothetical, the ALJ added that the individual would be off task more than 20 percent of the workday, which the expert said would eliminate any competitive employment opportunities for such an individual. [8-5] at 83–84.

Based on the plaintiff's RFC and the vocational expert's testimony, the ALJ concluded that there were jobs the plaintiff could perform in the national economy, like an addressing clerk, document preparer, call-out operator, and charge accountant clerk, despite her physical and mental limitations. [8-5] at 32–33. Consequently, the ALJ ruled she was not disabled. [8-5] at 33. The Social Security Appeals Council denied review. [8-1] at 7. The plaintiff filed her second federal lawsuit seeking judicial review. [1].

**III. Analysis**

An ALJ's hypotheticals to the vocational expert and RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).[16] Deficiencies in concentration, persistence, or pace must be explicitly addressed in the hypotheticals unless 1) the vocational expert was independently familiar with the claimant's medical file; 2) the hypothetical factored in the underlying mental conditions; or 3) the hypothetical used the equivalent but different terminology. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). Here, the ALJ did not explicitly address the plaintiff's limitations in concentration, persistence, or pace. [8-5] at 24, 79–84. And none of the exceptions apply. The vocational expert only reviewed materials related to the plaintiff's age, education, and work history, not her entire medical file. [8-5] at 76. The plaintiff's testimony, which the vocational expert heard, did not cover the plaintiff's abilities to concentrate, persist, or maintain pace. [8-5] at 48–75.[17] Nor did the hypotheticals adequately factor in the plaintiff's underlying mental conditions or use different but equivalent terminology. The ALJ limited the plaintiff to "simple, routine, repetitive" tasks and "unskilled" work. [8-5] at 24, 80, 82. However, terms like "simple, routine, repetitive" are not synonymous with moderate limitations in concentration,

---

[16] Recall, step five of the disability inquiry requires considering all of the claimant's limitations in order to determine whether she can work in the national economy despite her limitations. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996).

[17] Moreover, when an ALJ poses a series of increasingly restrictive hypotheticals to the vocational expert (as was the case here) the court must infer that the expert's attention was focused on the hypotheticals and not the record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

12

persistence, and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). The former refers to how quickly work can be learned and the level of complexity, while the latter concern a claimant's mental capacity to complete work over a sustained period of time. *Id.*; *see also* 20 C.F.R. §§ 404.1568, 404.1520. Similarly, the term "unskilled" work "does not provide any information about [the claimant's] mental condition or abilities." *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) ("the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job") (quoting SSR 85-15). Nor did the ALJ use any other words to incorporate the plaintiff's mental deficiencies. *See e.g. Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002) (the words "repetitive" and "low-stress" combined accommodated the plaintiff's mental restrictions). To build an accurate and logical bridge between the evidence of mental impairments and his conclusion about the plaintiff's ability to work in the national economy, the ALJ's hypotheticals should have addressed the plaintiff's limitations in her ability to maintain attention and concentrate for extended periods of time and to carry out detailed instructions, [8-2] at 25, in order to determine whether those limitations affected her job opportunities.

The ALJ gave equal weight to the opinions of the second medical consultant and the doctor who testified at the plaintiff's first hearing, [8-5] at 30, but their opinions differed on whether the plaintiff had limitations in one or both hands. [8-1] at 90; [8-2] at 23. The ALJ followed the second medical consultant's opinion, [8-2] at 23, limiting the use of the plaintiff's left hand in the hypotheticals and RFC

13

assessment, [8-5] at 24, without explaining why he disregarded the opinion of the doctor who testified that both of her hands were limited. [8-1] at 90. Consequently, the ALJ's RFC finding is not supported by substantial evidence. *See Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (a relevant, unresolved potential inconsistency in the evidence should be resolved by the ALJ or corrected by the Appeals Council). The ALJ must explain how the medical record substantially supports his finding that the plaintiff only faced limitations in her left hand during the period of disability. *See* [8-4] at 22, 56, 75; [8-2] at 7, 23; [8-1] at 90.

A treating source's opinion should receive controlling weight if it is well supported by medically acceptable clinical techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2).[18] However, an ALJ may assign less weight to a treating source's opinion based on the length, frequency, nature, and extent of the treatment relationship with the claimant. *Id.* As long as the ALJ minimally articulates his reasons for discrediting a treating source's opinion, *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Here, the ALJ rejected the plaintiff's treating neurologist's short note because the neurologist hadn't treated the plaintiff in over a year when he wrote it, reducing the value of the opinion. [8-5] at 30; *see Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (the reason for trusting a

---

[18] The plaintiff's claim was filed before March 27, 2017; the new social security regulations for evaluating medical opinions and findings do not apply. *See* 20 C.F.R. § 404.1520c.

14

treating physician's opinion is because of their greater familiarity with the claimant's conditions and circumstances). The neurologist's note also lacked any detail or explanation about the severity of her limitations, and his conclusion that the plaintiff was "unable to work" was inconsistent with his notes that her MS was stable. [8-5] at 3, 30; *see Clifford*, 227 F.3d at 871 ("internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion").[19] The ALJ ignored most of the PA's RFC statement for similar reasons: the PA did not explain the conclusions or their applicability to the relevant time period, and the conclusions were inconsistent with the PA's notes that the plaintiff's neurological exam results were normal. [8-5] at 31.[20] The ALJ articulated adequate reasons for discounting the two treating source opinions. I do not overturn these credibility determinations.[21]

When evaluating a claimant's subjective symptoms, the ALJ must consider a range of factors, including objective medical evidence, daily activities, the characteristics of the symptoms, aggravating factors, medication, and treatment.

---

[19] Furthermore, the final determination of whether a claimant is able to work is the Commissioner's decision, not a physician's. *See* 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled.").

[20] Evidence post-dating the last day insured can be considered if it is relevant to the correct time period. *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008).

[21] The plaintiff argues that the ALJ should not have given significant weight to the opinions of the two state psychological consultants, who concluded the plaintiff faced moderate limitations in concentration, persistence, and pace. [8-2] at 4–5, 8–11, 26; [8-5] at 31. But the plaintiff fails to show that these opinions were not supported by substantial evidence in the administrative record, since it was appropriate for the ALJ to assign little weight to the treating neurologist's note and the PA's RFC statement. Additionally, the plaintiff confuses the first ALJ (she) and the second ALJ (he) in her brief. *See e.g.* [14] at 14. I only review the second ALJ's decision.

*Clifford*, 227 F.3d at 871–72; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[22] While the ALJ is in the best position to determine a witness's truthfulness and forthrightness, *Skarbek*, 390 F.3d at 504–05, the ALJ must still provide specific reasons, supported by the record, for discrediting a claimant's subjective symptoms. *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). The court should be able to trace the path of the ALJ's reasoning. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Failure to provide an adequate explanation is grounds for reversal. *Minnick*, 775 F.3d at 937.

The ALJ said he discredited the plaintiff's testimony about weakness and poor balance because her physical examinations, by both her treating physicians and the state physicians, showed generally normal physical functioning. [8-5] at 26–28. He also explained that he discredited the alleged severity of the plaintiff's memory problems because the state psychological consultants found no significant memory limitations, were trained in evaluating social security disability claims, provided detailed explanations, and reached conclusions that were supported by the evidence. [8-5] at 31.[23] The administrative record supports the ALJ's explanations: the physical

---

[22] A claimant's own subjective statements about symptoms and pain will not, standing alone, establish disability. 20 C.F.R. § 404.1529.

[23] The absence of memory problems in 2017 and 2018 would not disprove that the plaintiff suffered memory problems during the period of disability, as one sentence in the ALJ's decision suggests. [8-5] at 26. However, the ALJ ultimately based his decision about the plaintiff's memory on the opinions of the state psychological consultants, not the discrepancy between the treating sources' 2018/2017 and 2016/2015 notes [8-5] at 31. Furthermore, while the plaintiff's treating neurologist's notes indicate memory problems in 2015 and 2016, they do not describe the extent of the problem. [8-7] at 4–6. (The plaintiff suggests that the government draws a false equivalency between the PA's notes and the neurologist's notes when evaluating the plaintiff's memory problems, [14] at 12, but that undercuts the plaintiff's

and psychological examinations the plaintiff underwent found no significant physical or memory problems. [8-4] at 50–52, 54–56, 68–70, 73–76, 89–90; [8-2] at 4–7, 9–10, 19–26; [8-8] at 19–20. The ALJ adequately explained his reasons for discrediting some of the plaintiff's testimony about her subjective symptoms.

The ALJ did not, however, provide specific reasons for why he discredited the plaintiff's claims about fatigue. [8-5] at 26. The medical records suggest that the plaintiff suffered from fatigue but do not describe the severity of her symptom. *See* [8-4] at 18, 50, 74. The plaintiff may have been physically active, [8-4] at 97, but the medical record is silent as to what that objectively meant in the context of competitive work. The ALJ made no specific determinations about the plaintiff's fatigue, like, for example, how frequently she napped. *See Milliken v. Astrue*, 397 Fed.Appx. 218, 223, 2010 WL 4024908, at *5 (7th Cir. 2010) (fatigue is a common symptom of both MS and depression and the severity, intensity, and persistence of the symptom can change over time). I am unable to trace how the plaintiff's symptoms of fatigue were accommodated by sedentary, postural, and environmental limitations. Further explanation is required.

Finally, the ALJ's errors regarding the plaintiff's mental and physical capacities are not harmless. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (an error is harmless only if the ALJ would reach the same result on remand). These physical and mental limitations may have eliminated the jobs suggested by the

---

own argument that the PA's notes corroborated the neurologist's conclusion that the plaintiff was unable to work. [14] at 13.)

17

vocational expert. *See Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019) (when the evidence supports restrictions in concentration, persistence, or pace, failing to account for such limitations is not harmless error); SSR 96-9p, 1996 WL 374185, at *8 (Jul. 2, 1996) ("Most unskilled sedentary jobs require good use of *both* hands and the fingers … Any significant manipulative limitation … will result in a significant erosion of the unskilled sedentary occupational base) (emphasis added); [8-5] at 84 (the vocational expert testified that if an employee is off task 10 percent or more, they would not sustain competitive employment).

### IV. Conclusion

The ALJ failed to properly account for the plaintiff's mental impairments, hand limitations, and fatigue, so his hypotheticals to the vocational expert and RFC assessment were not supported by substantial evidence. The ALJ's decision is reversed, and the case is remanded to the Commissioner of Social Security. The Clerk shall enter judgment and terminate this case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: December 22, 2020